IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXCOM GULF DISPOSAL, LLC, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2789 |
| | § | |
| MONTGOMERY COUNTY, TEXAS, | § | |
| *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Dismiss [Doc. # 34] filed by

Defendants Montgomery County (the "County"), Alan Sadler, Mike Meador, Craig

Doyal, James Noack, and Ed Rinehart.[1]   Plaintiff TexCom Gulf Disposal LLC

("TexCom") filed an Opposition [Doc. # 38], Defendants filed a Reply [Doc. # 39],

and Plaintiff filed a Sur-Reply [Doc. # 40].   Having reviewed the full record and

applicable legal authorities, the Court concludes that Plaintiff in its First Amended

Complaint [Doc. # 28] fails to state a federal claim for which relief can be granted.

As a result, the Court grants with prejudice Defendants' Motion to Dismiss on the

---

[1]     Defendant Ed Chance requested leave to adopt the Motion to Dismiss filed by the other Defendants, and the Court granted Chance's request. *See* Order [Doc. # 36]. As a result, Defendant Chance has a pending Motion to Dismiss [Doc. # 35] that is identical to the Motion to Dismiss filed by all the other Defendants.

federal claims, and dismisses without prejudice the state claims pursuant to 28 U.S.C. § 1367(c).

## I.      BACKGROUND

TexCom is a wastewater injection company.  In early 2005, TexCom acquired a 27-acre tract of land in Montgomery County, Texas, for the purpose of developing a wastewater injection well facility on the property.  At that time, TexCom planned to access the property from Creighton Road rather than from FM 3083.

In August 2005, TexCom applied to the Texas Commission on Environmental Quality ("TCEQ") for an Underground Injection Control ("UIC") permit to allow it to "re-complete the existing well" and to drill up to three future wells.  *See* First Amended Complaint [Doc. # 28], ¶ 27.  TexCom applied also for an Industrial Solid Waste ("ISW") permit to construct and operate a surface facility.  The County advised the TCEQ of its "very strong opposition to the issuance of this permit" to TexCom. *See id.*, ¶ 34.  The County stated that it had environmental and drinking water concerns about TexCom's proposed use of the property as a wastewater injection site. *See id.*

In January 2007, TexCom asked the TCEQ to refer the matter to the State Office of Administrative Hearings ("SOAH") for a hearing.  In April 2007, the TCEQ referred the case as requested and two Administrative Law Judges ("ALJs") held a

preliminary hearing in July 2007. Montgomery County requested and was granted the right to participate in the hearing. After discovery was completed, the ALJs conducted an evidentiary hearing in December 2007, at which the County presented witnesses in support of its opposition to TexCom's application for the TCEQ permits. In April 2008, the ALJs issued their proposal, recommending that the TCEQ grant TexCom's application for the UIC and ISW permits.

In November 2008, the TCEQ remanded the matter to the SOAH for reconsideration. In 2009, while the matter was being reconsidered, Denbury Onshore, LLC ("Denbury") petitioned to intervene. Denbury asserted that the TexCom wastewater wells could interfere with its plans to conduct oil recovery operations in the Conroe oil field. The ALJs granted Denbury's petition to intervene. In June 2010, Denbury petitioned the Railroad Commission to withdraw its "no harm" letter submitted to the TCEQ in September 2005.

Meanwhile, during the period of reconsideration between November 2008 and November 2010, Montgomery County continued its public opposition to TexCom's permit applications. The ALJs held the remand hearing in June 2010, at which the County presented three new witnesses to support its "technical case," and presented testimony from a Texas Department of Transportation ("TxDOT") employee regarding traffic and property access issues. *See* First Amended Complaint, ¶ 49.

Montgomery County, supported by its TxDOT witness, argued that TxDOT was unlikely to grant TexCom's request to relocate its driveway to FM 3083 because "a driveway at that location could potentially conflict with the driveway spacing guidelines in TxDOT's Access Management Manual." *See id.*, ¶ 50.[2]

The ALJs issued amended proposals in November 2010, recommending that TexCom's UIC permit application be denied based on Denbury's operations and recommending that TexCom's ISW permit be granted. The ALJs recommended that the ISW permit be contingent on TexCom obtaining a TxDOT driveway permit for FM 3083 access.

In April 2011, over the County's objection and contrary to the ALJs' recommendation, TCEQ granted TexCom's applications for both the UIC and the ISW permits. The TCEQ imposed the special conditions that TexCom access the property from FM 3083 rather than from Creighton Road, and that TexCom obtain a TxDOT permit for the new driveway from FM 3083. Montgomery County appealed the TCEQ's decision to the Travis County District Court, and the appeal remains pending.

In June 2011, TexCom applied to TxDOT for an access connection permit to build a driveway on its 27-acre property for access to and from FM 3083. In October

---

[2]     Indeed, in October 2011, TxDOT denied TexCom's driveway permit application based on these spacing guidelines.

2011, TxDOT denied the application based on the spacing guidelines in its Access Management Manual.  Later that month, TexCom applied for a variance from the spacing guidelines.  TexCom alleges that under most circumstances TxDOT "will grant a variance if the applicant provides documentation that meets" the criteria listed in TxDOT Rule 11.52.  *See* First Amended Complaint, ¶ 64.  Consequently, TexCom anticipated that TxDOT would grant the requested variance.

TxDOT Rule 11.56 allows a Texas city or county to request delegation from TxDOT of the "responsibility for issuing permits for access connection to state highways within [its] jurisdiction under a local access management plan when the [city or county] has the ability to issue permits."  *See* 43 TEX. ADMIN. CODE § 11.56.  Pursuant to Rule 11.56, Montgomery County in early December 2011 applied to obtain delegation of TxDOT's driveway access permitting authority.  TexCom opposed the County's request and sent a letter to TxDOT asking that the County's application for delegation of permitting authority be denied.  Three days thereafter, TexCom sought a temporary restraining order ("TRO") and preliminary injunction from Travis County District Court to prevent TxDOT from delegating the permit issuing authority to Montgomery County.  Although the Travis County court issued the TRO on December 8, 2011, that court lifted that Order and denied the request for a preliminary injunction following a hearing on December 21, 2011.  TxDOT

approved Montgomery County's application and delegated permit issuing authority to the County in January 2012.  TexCom alleges that Montgomery County has exercised its delegated permitting authority in an improper manner by forwarding all driveway permit applications to TxDOT for review.[3]  *See* First Amended Complaint, ¶ 80.

On February 7, 2012, TexCom withdrew its request for a variance of the driveway spacing guidelines.  As a result, TxDOT's October 2011 denial of TexCom's June 2011 application for a driveway permit for its 27-acre tract became final.

In November 2012, TexCom acquired an adjacent 3.5 acres of land on FM 3083 in Montgomery County, increasing the size of its tract to 30.5 acres.  TexCom admits that it purchased the property "to secure additional property with approved access on FM 3083."  *See id.*, ¶ 81.  The prior owner of the 3.5 acres, Bryan Poage, had recently obtained, without opposition from the County, a driveway permit to construct a

---

[3]     TxDOT's Access Management Manual provides that a local entity to whom permitting authority has been delegated must coordinate with and seek approval by TxDOT "prior to any local approval" where a proposed driveway could have any "impacts to drainage on the state highway system." *See* TxDOT Access Management Manual, July 2011, Chap. 2, § 4.  Montgomery County's Local Access Plan provides that the County Engineer's Office "shall forward copies of application to TxDOT, along with any additional information obtained through the permit process, as necessary to facilitate TxDOT assistance and approval of any potential impact" on listed considerations. *See* Local Access Plan, December 2011, § VI, p. 2.

"Commercial access driveway" on his 3.5 acre property along FM 3083 (referred to herein as the "Poage Permit").[4] The Poage Permit, issued in September 2012, allowed him to replace two existing driveways with a single 45-foot commercial driveway. The Poage Permit specifically stated that a new access driveway permit could be required "in the event of a material change in land use or change in driveway traffic volume or vehicle types." *See* Poage Permit [Doc. # 44], Exh. 2, ¶ 6.

In April 2013, TexCom applied to Montgomery County for a building permit to construct the surface facility pursuant to the ISW permit issued by the TCEQ. In response, the County Engineer advised TexCom that it needed to seek a new driveway permit. Consistent with the special conditions the TCEQ placed on the UIC and ISW permits issued to TexCom, the County Engineer further advised that TexCom needed to "seek an amendment to its ISW Permit to reflect an approved access point on FM 3083."[5] *See id.*, ¶ 100. TexCom advised the County that it intended to rely on the driveway permit issued to Poage and, therefore, should not be required to obtain a new

---

[4]   In October 2012, the County Attorney "asserted that the [Poage Permit] had not been approved for any commercial use . . .." *See* First Amended Complaint, ¶ 89. This statement by the County Attorney appears to be incorrect, but this is unclear from the record and, as explained below, is immaterial to the Court's decision.

[5]   An approved access point on FM 3083 was a special condition on the ISW permit. The TCEQ also required TexCom "to update its ISW Permit to reflect its final, approved driveway location prior to accepting deliveries of waste." *See* First Amended Complaint, ¶ 102.

permit.  TexCom also advised the County that it would seek an amendment to the ISW permit "at an appropriate time."  *See id.*, ¶ 102.

In July 2013, the County advised TexCom that the use of the Poage property driveway was a change that required a new driveway permit under the terms of the Poage Permit.[6]  At that time, TexCom did not submit a new driveway permit application and, therefore, the County did not approve TexCom's application for the building permit to construct the surface facility.

TexCom filed this lawsuit in September 2013.  At an initial conference in December 2013, the Court directed TexCom to submit by January 14, 2014, new applications for the building and driveway permits as required by the County.  On January 14, 2014, TexCom submitted its building and driveway permit applications. For all technical aspects of the application, TexCom resubmitted the application for the driveway permit that Poage had submitted in 2012 in connection with his 3.5-acre tract.  *See* TexCom Driveway Application [Doc. # 44], Exh. 3.  Additionally, in connection with its 2014 application, TexCom submitted a cover letter from its attorney explaining TexCom's position that a new application was not required, application forms identifying TexCom as the applicant, and a two-page "Commercial

---

[6]    Plaintiff characterizes this as a "revocation" of the Poage Permit.  *See, e.g.*, Opposition [Doc. # 38], p. 27.

and Industrial Driveway Access Request Form" stating the purpose of the application, the proposed use of the property, some background information, and attaching Poage's Permit Application for a driveway on his 3.5-acre tract. *See id.* Montgomery County forwarded the application to TxDOT for review. On February 25, 2014, the County notified TexCom that its driveway permit application had been denied, attaching a supporting memo from TxDOT. TxDOT noted that the Poage Permit had been issued for use by Poage to store mobile homes on his 3.5 acre property, that the Poage Permit did not extend to future owners of the property, and that TexCom had not requested access to more than Poage's original tract. *See* TxDOT "Review Comments" [Doc. # 44], Exh. 4. Subsequently, on February 27, 2014, the County denied TexCom's building permit application based on TxDOT's recommended denial of the driveway permit and TexCom's failure to obtain an amendment to the ISW Permit issued by TCEQ.

On March 14, 2014, TexCom filed its First Amended Complaint [Doc. # 28]. TexCom asserted claims under 42 U.S.C. § 1983, alleging that Defendants violated its due process and equal protection rights. TexCom also asserted violations of the Texas Constitution and a state law claim for tortious interference with prospective contractual relations. Defendants filed their Motions to Dismiss, which have been fully briefed and are now ripe for decision.

## II.    MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

Defendants seek dismissal of the federal claims in Plaintiff's First Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  Defendants argue that the federal due process and equal protection claims are actually takings claims.[7]  Defendants argue that, whether viewed as takings claims or under a traditional ripeness analysis, TexCom's federal claims are unripe.  The Court concludes that the federal due process and equal protection claims are not subsumed by a takings claim and are, instead, independent federal claims that are ripe for purposes of subject matter jurisdiction.

### A.    Takings Claim Ripeness

"A takings claim is not ripe until (1) the relevant governmental unit has reached a final decision as to what will be done with the property and (2) the plaintiff has sought compensation through whatever adequate procedures the state provides." *Urban Developers LLC v. City of Jackson*, 468 F.3d 281, 292-93 (5th Cir. 2006); *Sandy Creek Investors, Ltd. v. City of Jonestown*, 325 F.3d 623, 626 (5th Cir. 2003) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172,

---

[7]    A takings claim involves a violation of the Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment ("Takings Clause"), which directs that the government shall not take one's private property "for public use, without just compensation."  *See* U.S. CONST. amend. V; *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012).

194-95 (1983)).  It is undisputed that TexCom has not sought compensation through the available state procedures for the alleged "taking" of its property by failing to issue driveway and building permits.  As a result, any federal takings claim would not be ripe at this time.  *See, e.g., Severance v. Patterson*, 566 F.3d 490, 497 (5th Cir. 2009); *Jabary v. City of Allen*, 547 F. App'x 600, 604-05 (5th Cir. Nov. 25, 2013).

TexCom does not, however, assert a federal takings claim in this case.[8]  Its only federal claims under § 1983 are for alleged violations of its procedural due process, substantive due process, and equal protection rights.  Defendants argue, however, that these federal claims are "subsumed" in an unpled, unripe takings claim.  The Court is not persuaded.

The Fifth Circuit has rejected a blanket rule that the Takings Clause subsumes any substantive due process claims.  *See John Corp. v. City of Houston*, 214 F.3d 573, 583 (5th Cir. 2000).  Instead, the Court must conduct a careful analysis to determine the extent to which a plaintiff's other federal claims rest on the same protections that are afforded by the Takings Clause.  *See id.*

In this case, Plaintiff's due process claims (Count One in the First Amended Complaint) are based on allegations that the County persistently and arbitrarily denied

---

[8]     TexCom asserts a state law takings claim under the Texas Constitution.  *See* First Amended Complaint, ¶¶ 143-145.

its permit applications without due process.  Its equal protection claim (Count Two in the First Amended Complaint) is based on its right not to be treated differently than others who are similarly situated.  These claims are not subsumed in a takings claim because they are not based on rights protected by the Takings Clause – the right to just compensation when a governmental entity takes one's property interest.  *See, e.g., Bowlby v. City of Aberdeen*, 681 F.3d 215, 222 (5th Cir. 2012).[9]   Plaintiff is challenging the County's December 2011 decision to obtain delegation of permitting authority from TxDOT and to deny its building and driveway permit applications as independent decisions in violation of TexCom's due process and equal protection rights, not as part of a violation of the Takings Clause.  Such claims, which are based on rights not protected by the Takings Clause, are not "amenable to treatment as a takings claim" and need not satisfy the special ripeness requirements of a takings claim.  *See John Corp.*, 214 F.3d at 585.

Additionally, Plaintiff is not seeking, as damages under these federal claims, the value of its entire property or business.  Instead, Plaintiff is claiming that it was denied

---

[9]    In *Bowlby*, the City issued a permit to the plaintiff to operate a "Sno Cone" hut at a public street intersection.  Two months later, after the plaintiff began operating her "Sno Cone" business, the City revoked the permit.  The Fifth Circuit, holding that the due process claim was not subsumed in the takings claim, noted that the "due process injury is . . . complete at the time process is denied" and noted further that the plaintiff could be awarded damages for the revocation of her permit that would be different than the value of her business.  *See Bowlby*, 681 F.3d at 222, 225.

due process and equal protection rights that exist independently from its property rights, and for which it seeks to recover damages that are different from the value of the property, such as commercial expectations, costs incurred in seeking to obtain the permits, and punitive damages. *See, e.g., Bowlby*, 681 F.3d at 225. As a result, the claims are not mischaracterized takings claims.[10]

### B.    Traditional Ripeness Analysis

Defendants argue also that the due process and equal protection claims are not ripe under a traditional ripeness standard. "The ripeness inquiry involves '(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011) (quoting *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003)).

Defendants argue that the claims are not "fit for judicial decision" because TexCom has not submitted a new application for a driveway permit. *See* Defendants' Reply [Doc. # 39], p. 11. TexCom alleges that it has "timely submitted its driveway

---

[10]    In cases in which the Fifth Circuit has held that due process claims were subsumed in a federal takings claim, the property at issue had been destroyed and the only alleged injury was the taking of the property. *See, e.g., John Corp.*, 214 F.3d at 585 (procedural due process claim based on lack of due process prior to demolition of apartment building); *Steward v. City of New Orleans*, 537 F. App'x 552, 555 (5th Cir. Aug. 2, 2013) (procedural due process claim subsumed where only injury that resulted from the alleged due process violation was the demolition of plaintiff's home without just compensation).

and building permit applications to the County . . . ." *See* First Amended Complaint,

¶ 111.   Although Defendants complained that the new application was simply a

resubmission of Poage's 2012 application,[11] it is TexCom's position that the January

2014 application, attached as Exhibit 3 to Supplemental Filing [Doc. # 44], is its new

application.   Consequently, Defendants' argument that the federal claims are not "fit

for judicial decision" because there is no new application is unfounded.

Defendants argue also that withholding consideration of the federal claims

would not cause any further hardship to the parties because the County's appeal of the

TCEQ permits is pending.   *See* Defendants' Reply at 11.   Defendants argue that if the

appeal is successful and the permits are withdrawn by the TCEQ, "TexCom's stated

uses of the property would be diminished or eliminated."   *See id.*   As discussed above,

however, the damages TexCom seeks in connection with the federal claims in this

case are not based exclusively on the proposed use of the property.   Instead, TexCom

is seeking to recover, *inter alia*, damages for lost commercial opportunities and

expenses incurred in its attempts to obtain driveway and building permits.   These

damages could increase if the Court were to delay consideration of the federal claims.

---

[11]     Defendants have conceded that TexCom's January 2014 permit application included
more than Poage's 2012 application and a letter from TexCom's counsel.   *See*
Supplement to and In Correction of Defendants' Amended Motion to Dismiss and
Reply to Plaintiff's Response [Doc. # 45].

The Court finds that the federal claims in this case are ripe for decision.  As a result, there is no ripeness impediment to this Court's subject matter jurisdiction.  The Court denies Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction.

## III.   <u>MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>

Defendants argue alternatively that the First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff has failed to allege a factual basis for its federal claims.  As explained below, the Court concludes that Plaintiff has failed to state a federal claim upon which relief could be granted and, on that basis, grants Defendants' Motions to Dismiss.

### A.   <u>Standard for Motion to Dismiss</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Harrington*, 563 F.3d at 147.  The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d

614, 617 (5th Cir. 2012).  When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief.  *Iqbal*, 556 U.S. at 679.  Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008) (on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the Court if the documents are sufficiently referenced in the complaint and no party questions their authenticity); *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court

in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.  Additionally, when deciding a motion to dismiss, the Court is permitted to refer to matters of public record of which it may take judicial notice. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

### B.    Due Process Claim - Procedural

Plaintiff argues that Defendants violated its procedural due process rights when Montgomery County obtained delegation of TxDOT's driveway permitting authority, "revoked" the driveway permit issued to Poage,[12] denied TexCom's April 2013 application for a building permit, and denied TexCom's new applications for driveway and building permits submitted in January 2014.  *See* Opposition, pp. 26-27.[13] Procedural due process requires "the government to follow appropriate procedures when its agents decide to deprive any person of life, liberty, or property."[14] *John Corp.*, 214 F.3d at 577 (internal quotations and citations omitted).  "Due process

---

[12]    As noted above, TexCom takes the position that the County's requirement that it submit a new driveway permit application is a "purported revocation" of Poage's driveway permit. *See* Opposition, p. 27.

[13]    It is unclear in the First Amended Complaint that these are the bases for the procedural due process claim, but these actions are listed in TexCom's Opposition to the Motion to Dismiss.

[14]    For purposes of its analysis of Plaintiff's federal claims, the Court assumes without concluding that Plaintiff has a protectable property interest in permits for which it applied that were not issued.  *See, e.g., Bush v. City of Gulfport*, 454 F. App'x 270, 276 (5th Cir. Nov. 15, 2011) (citing *Vineyard Invs., L.L.C. v. The City of Madison*, 440 F. App'x 310, 314 (5th Cir. Sept. 2, 2011)).

requires notice and an opportunity for a hearing before a government entity can deprive a person of property rights." *Gibb v. City of Friendswood*, 2007 WL 4326739, *5 (S.D. Tex. Dec. 6, 2007) (citing *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 299 (5th Cir. 1998)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.*

In this case, Plaintiff has failed to allege a legally viable factual basis for its procedural due process claim. There is no allegation that the County obtained delegation of TxDOT's permitting authority without notice to TexCom. Indeed, TexCom's allegations in the First Amended Complaint show that TexCom participated fully and zealously in the delegation process. The allegations in the First Amended Complaint indicate also that TexCom was provided a full opportunity to apply for building and driveway permits. Plaintiff's allegations in this case fail to support its assertion of a procedural due process violation by Defendants.

Specifically, with respect to the delegation of TxDOT's permitting authority to Montgomery County, Plaintiff's allegations show that the County followed the proper procedure provided by TxDOT Rule 11.56. *See* First Amended Complaint, ¶ 73.

Plaintiff alleges that it had actual notice of Montgomery County's request for delegation, sent a letter to TxDOT asking that the request be denied, and sought to obtain in state court a TRO and preliminary injunction against TxDOT granting the request.  *See id.*, ¶¶ 74-76.  Plaintiff alleges in its First Amended Complaint that TxDOT took the position during the TRO and preliminary injunction proceeding in Travis County that delegation is mandatory where "the local government entity has submitted the proper application and followed the appropriate procedures" and that TxDOT "cannot function as the 'thought police' to ascertain" whether the request for delegation is made in good faith.  *See id.*, ¶ 77.  Plaintiff alleges that TxDOT, over TexCom's vehement objection, approved Montgomery County's request for delegation of driveway permitting authority.  *See id.*, ¶ 78.  It is clear from these allegations that Plaintiff received any process due to it in connection with the delegation of TxDOT's permitting authority.  This theory does not state a procedural due process claim on which relief may be granted.

With respect to the denials of its permit applications, TexCom has failed to allege a factual and legal basis sufficient to state a legally viable procedural due process claim.  TexCom applied for permits, using the procedures designed for such applications.  Montgomery County considered the various permit applications and, after obtaining input from TxDOT, denied them.  Plaintiff disagrees with the results,

yet there is no allegation that Plaintiff availed itself of the appeal process following any of the denials.[15]  *See, e.g., Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998) (holding that a plaintiff does not state a viable procedural due process claim when she "skipped an available state remedy"); *Smith v. Texas*, 2011 WL 6039838, *3 (N.D. Tex. Dec. 5, 2011) ("party's failure to avail herself of the available process invalidates her later claim that she was deprived of procedural due process").  Additionally, Plaintiff complains that there were no reasons given for the denials.  Plaintiff cites no legal authority for its position that statements of reasons were necessary or that the County omitted any particular procedural step.  Plaintiff has not alleged facts demonstrating that, by law or regulation, additional process was constitutionally required during the permit application process.  *See, e.g., Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) ("Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process" because "constitutional minima may nevertheless have been met").

More specifically, with respect to the denial of the initial driveway permit, Plaintiff alleges that TxDOT (not Montgomery County) denied the driveway permit

---

[15]     Montgomery County's Local Access Plan provides for an appeal of a driveway permit.  *See* Local Access Plan, § XI, Appeal Process.  Plaintiff argues that an appeal would have been futile because it would be considered first by Defendant Ed Rinehart and then by the full County Commissioners Court, which is comprised exclusively of Defendants.  *See* Response [Doc. # 38], pp. 17-18.

in October 2011 based on the agency's spacing guidelines for which TexCom would need a variance.  *See* First Amended Complaint, ¶ 63.  TexCom alleges that it applied for a variance, *see id.*, ¶ 64, but later withdrew the variance request, *see id.*, ¶ 79.  As a result, TexCom's factual allegations refute its argument that Montgomery County violated its procedural due process rights by denying the original application for a driveway permit.

With reference to the alleged revocation of Poage's driveway permit, the Court notes that "once issued, a license or permit cannot be taken away by the [government] without due process."  *See Bowlby*, 681 F.3d at 220.  In this case, however, Plaintiff makes no allegation in the First Amended Complaint that Montgomery County has revoked Poage's driveway permit.  Instead, Plaintiff TexCom alleges that Montomery County required it to submit a new driveway permit application.  The Poage Permit, cited in Plaintiff's First Amended Complaint, specifically reserves the right "to require a new driveway access permit in the event of a material change in the land use or change in driveway traffic volume or vehicle types."  Poage Permit, ¶ 6.  In this case, Poage was granted a permit for a driveway to use in connection with the storage of mobile homes on his 3.5 acres.  *See* TxDOT Review Comments [Doc. # 44], Exh. 4.  TexCom, however, intends to use the driveway for a 30.5 acre site on which wastewater injection wells are to be drilled.  As a result of this proposed change in

land use, the County was expressly authorized under ¶ 6 of the Poage Permit to require a new driveway permit.  Plaintiff has failed to allege a factual basis for its procedural due process claim with reference to the Poage Permit.

TexCom has failed to allege a factual basis for its assertion that Defendants violated its procedural due process rights.  As a result, the Court grants Defendants' Motions to Dismiss this claim.

### C.   Due Process Claim - Substantive

Plaintiff asserts that Defendants violated its substantive due process rights based on an "unwarranted and arbitrary aversion to the proposed facility."  *See* Opposition, p. 29.  Plaintiff argues specifically that there was no rational basis for Montgomery County to request and obtain delegation of TxDOT's permitting authority and "without a justification for the initial seizure of permitting authority, their other 'rational bases' have no credibility."  *See id.* at 30.  Plaintiff alleges that after TexCom acquired the Poage property, Montgomery County (1) imposed "after-the-fact" conditions on the Poage Permit; (2) asserted the existence of a "substantial change" requiring a new permit application; (3) demanded that TexCom apply for a new permit; and (4) denied TexCom use of the Poage Permit.  *See* First Amended Complaint, ¶ 133.  With reference to TexCom's applications for a building permit, TexCom alleges that the County "has repeatedly asserted invalid 'requirements' to

obtain a new driveway permit and amended ISW Permit – knowing TexCom cannot do so because [the County] will never approve driveway access." *See id.*, ¶ 134.

The County's actions satisfy the requirements of substantive due process if they are rationally related to a legitimate governmental interest. *See Simi Inv. Co., Inc. v. Harris County, Texas*, 236 F.3d 240, 249 (5th Cir. 2000) (citing *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996)). "The question is only whether a rational relationship exists between the [action] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Id.* at 251 (quoting *FM Props.*, 93 F.3d at 174). For purposes of the substantive due process analysis, "the true purpose of the [action], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." *Id.* at 254 (quoting *FM Props.*, 93 F.3d at 174).

*Delegation of Permitting Authority*.– The process to obtain delegation of permitting authority is available under Texas law to any city or county that applies and follows the proper procedures, including an approved local access plan. *See* 42 TEX. ADMIN. CODE § 11.56; *see also* First Amended Complaint, ¶ 77. Montgomery County's local access plan describes the County's legitimate government interests, providing that the plan's requirements are:

> intended to promote a safe and efficient transportation system within the County, to ease traffic congestion and reduce fuel consumption and

23

vehicle emissions. These standards are also intended to promote economic development of the County by providing traffic movement that fosters business opportunities and real estate development commensurate with this County's rapid growth. The County also believes these standards will encourage a collaborative effort with TxDOT that will ensure uninhibited statewide mobility efforts consistent with the design scheme of TxDOT.

Local Access Plan, § II.[16] It is at least debatable that Montgomery County's decision to participate in TxDOT's delegation of permitting authority was rationally related to these expressed, legitimate governmental interests. Plaintiff has alleged no facts that indicate objectively that Montgomery County's actions were not rationally related to, even if not entirely motivated by, the legitimate objectives set forth in the Local Access Plan.

*Driveway Permit*.– Plaintiff alleges that Defendants violated its substantive due process rights in connection with the driveway permit by imposing "after-the-fact conditions" and by requiring a new permit application rather than allowing TexCom to use the existing Poage Permit.[17] The Poage Permit expressly reserved the right to

---

[16]     TexCom does not and cannot persuasively argue that the Montgomery County Local Access Plan fails to advance legitimate governmental interests. *See* text and citations, *infra*, at 25-26.

[17]     The alleged "after-the-fact conditions" involved letters from Montgomery County officials stating that the Poage Permit did not grant approval for commercial use of the driveway. *See* First Amended Complaint, ¶¶ 89, 94. County officials' statements of the County's position regarding the Poage Permit had no effect on whether the Poage Permit allowed or did not allow commercial use and do not provide a legal or

(continued...)

require a new permit should a material change in the land use or traffic volume occur.

*See* Poage Permit, ¶ 6.  Managing land use and traffic volume in Montgomery County

is a legitimate governmental interest.  *See Beckerman v. City of Tupelo*, 664 F.2d 502,

509 (5th Cir. 1981) (municipality has "legitimate government interest in protecting

health, safety and welfare" of its citizens); *FM Props.*, 93 F.3d at 175 (legitimate

government interest in avoiding "ecologically and environmentally insensitive

development"); *Persyn v. U.S.*, 138 F.3d 951, *1 (5th Cir. Feb. 16, 1998) (legitimate

government interests include protecting health and safety, controlling economic and

land development, stabilizing current uses of land, and promoting quality of life); *Md.*

*Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 407 (S.D. Tex. 2011)

(Rosenthal, J.) ("Undoubtedly, the City has a legitimate government interest in

regulating traffic.").  It is at least debatable that requiring a new permit application if

there are material changes in land use and traffic volume is rationally related to these

legitimate government interests.   It was reasonable, at least debatably, for

Montgomery County to determine that TexCom's proposed use of the Poage Permit

constituted a material change in land use (from storage of mobile homes to drilling

wastewater injection wells) and traffic volume (inherent in accessing 30.5 acres rather

---

[17]      (...continued)
          factual basis for a substantive due process claim.

than only 3.5 acres).  Consequently, the allegations related to the driveway permit fail to state a substantive due process claim.

*Building Permit*.– Plaintiff alleges that Montgomery County violated its substantive due process rights when it required TexCom, in connection with its building permit application, to submit a new driveway permit and to amend the ISW Permit issued by TCEQ.  For the reasons stated above, the requirement to submit a new driveway permit is expressly contemplated by the Poage Permit and is rationally related to a legitimate governmental interest.  The original ISW Permit issued by the TCEQ included the special condition that TexCom obtain a driveway permit for an access point on FM 3083.  The TCEQ also required TexCom to amend or update its ISW Permit to reflect its final, approved driveway location before it could accept any deliveries of waste.  Consequently, it was reasonable to require that the ISW Permit be amended or updated as required by the TCEQ prior to building the solid waste structure on the property.[18]

*Defendants' Subjective Intent*.– Plaintiff complains vehemently that the County's actions were based on animosity to TexCom and its wastewater business. Plaintiff's allegations indicate that the parties' disagreement about TexCom's

---

[18]    Alternatively, TexCom could potentially seek an amendment to the ISW Permit from TCEQ to delete the special condition requiring a driveway permit for access to the property from FM 3083.

entitlement to the driveway and building permits was longstanding and extremely contentious.    Notwithstanding allegations that the County targeted TexCom specifically and based its decisions on some sort of vendetta, which allegations are taken as true for purposes of a motion to dismiss, Plaintiff has failed to state a viable substantive due process claim where there exists, arguably, a rational basis for the governmental decision.  *See Simi Invest.*, 236 F.3d at 254 ("the true purpose of the [action], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis"); *see also Greenbriar Village, LLC v. Mountain Brook*, 345 F.3d 1258, 1264 (11th Cir. 2003) (rejecting substantive due process claim notwithstanding evidence that the City "targeted Greenbriar specifically"); *Bush v. City of Gulfport*, 454 F. App'x 270, 278 (5th Cir. 2011) (holding that substantive due process claim failed "even with evidence that may government officials were personally opposed to the project").

   ***Conclusion on Substantive Due Process***.– TexCom's allegations regarding substantive due process violations primarily involve actions by Montgomery County that were intertwined with prior decisions of and requirements imposed by TxDOT in the Poage Permit and by the TCEQ in the original ISW Permit.  There is no allegation that these actions by TxDOT and the TCEQ are in any way a violation of TexCom's substantive due process rights.  The allegations do not provide a legal or

factual basis for a substantive due process claim based on Montgomery County's conduct pursuant to TxDOT's and TCEQ's earlier decisions on which that conduct was based.

Absent adequate factual allegations that support TexCom's position that the County's decisions were not rationally related to a conceivable governmental interest, Plaintiff has failed to state a substantive due process claim upon which relief can be granted. The Court, therefore, grants Defendants' Motions to Dismiss this claim.

### D.   <u>Equal Protection Claim</u>

"The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently." *John Corp.*, 214 F.3d at 577; *see also Bowlby*, 681 F.3d at 227. To state an equal protection claim, TexCom must allege that it "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *Bowlby*, 681 F.3d at 227 (internal quotations and citations omitted). Similarly, to state an equal protection claim involving a "class of one," the plaintiff must allege that it was treated differently from others who are similarly situated and that "there was no rational basis for the disparate treatment." *See Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff alleges generally and summarily that it "has been treated differently than any other landowners in Montgomery County without any rational basis." *See* First Amended Complaint, ¶ 139.  Plaintiff, however, identifies only Poage as a landowner who was treated differently when his driveway permit application was granted while TexCom's was denied.  Plaintiff's allegations demonstrate, however, that Poage was not similarly situated.  Poage received a driveway permit for access to a 3.5-acre parcel of land on which he intended to store mobile homes, while Tex-Com was seeking to obtain a driveway permit to access a 30.5-acre parcel for use in a wastewater injection business.  *See* TxDOT Review Comments.  The land use is materially different, and the volume of traffic using a driveway to access a 30.5-acre parcel is likely to be much greater than the volume using the driveway to access a significantly smaller 3.5-acre tract.

TexCom alleges further that there are other wastewater injection wells in Montgomery County and elsewhere in Texas, and that Montgomery County "actively encouraged other large commercial developers to conduct their business in the County . . .." *See id.*, ¶¶ 139-140.  Plaintiff does not, however, allege facts that suggest these other wells, the real estate on which they are located, the locations of those wells on the land parcels, or those other unspecified commercial developers are sufficiently similar to TexCom's operation to support an equal protection claim.  *See, e.g.,*

*Bowlby*, 681 F.3d at 227; *Vineyard Invs.*, 440 F. App'x at 314.  As a result, the Court grants Defendants' Motions to Dismiss Plaintiff's federal equal protection claim.

### E.   <u>Leave to Amend</u>

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  In this case, Plaintiff is represented by capable legal counsel.  Plaintiff filed an original Complaint [Doc. # 1], to which Defendants filed Motions to Dismiss [Docs. # 19 and # 20], identifying the purported deficiencies and the asserted bases for dismissal.

At the initial conference in December 2013, the Court discussed the pending motions to dismiss with counsel.  The Court denied the motions without prejudice. *See* Hearing Minutes and Order [Doc. # 25].  The Court granted Plaintiff leave to file an amended complaint, setting forth the ***full*** factual and legal bases for its claims.  *See id.*  Plaintiff did so by the Court-imposed deadline.

This dispute has been ongoing since 2005.  TexCom has had ample opportunity to obtain any existing information to support its claims, including discovery and an evidentiary hearing during the TCEQ proceedings.  As a result, the key facts on which the federal causes of action could be based, if existing, would have been within

Plaintiff's knowledge well before the March 14, 2014, deadline for the First Amended Complaint.  It appears unlikely, therefore, that Plaintiff can amend to state viable claims for relief.  "'[I]t appears that a third chance to amend would prove to be futile.'"  *C&C Inv. Props., LLC v. FDIC*, 2013 WL 1136337, *3 (S.D. Miss. Mar. 18, 2013) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc*., 336 F.3d 375, 387 (5th Cir. 2003)).  Consequently, the dismissal of the federal claims in TexCom's First Amended Complaint, and of this lawsuit, is without leave to replead again.

## IV.   REMAINING STATE LAW CLAIMS

This case is in its very early stages.  Indeed, the Court has not yet entered a docket control order, except to establish a deadline for Plaintiff's First Amended Complaint and a briefing schedule for the motions to dismiss.  Because the federal claims have been dismissed at such an early stage of the proceedings, under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's pendent state law claims for a deprivation of right to due course of law in violation of the Texas Constitution, taking of property without just compensation in violation of the Texas Constitution, and tortious interference with prospective contractual relations.  *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000); *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998) ("Certainly, if the

federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## V.   CONCLUSION AND ORDER

Plaintiff in its First Amended Complaint asserts federal due process and equal protection claims that are distinguishable from a federal takings claim and are ripe under the traditional ripeness analysis.  However, Plaintiff fails to state a claim for relief under these provisions of the United States Constitution.  As a result, it is hereby

**ORDERED** that Defendants' Motions to Dismiss [Docs. # 34 and # 35] are **GRANTED** and the federal claims are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that the state law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

The Court will issue a separate final order.

SIGNED at Houston, Texas, this **27th** day of **June, 2014**.

Nancy F. Atlas
United States District Judge